UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHAMEIKA CHAN,

                Plaintiff,

      v.

ISPOT, INC.,

                Defendants.

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:

20-CV-8222 (RA)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

    Plaintiff Shameika Chan brings this action for declaratory, injunctive and equitable relief, and monetary damages, alleging that Defendant iSpot, Inc., discriminated and retaliated against her due her race and gender in violation of federal, state, and local law. iSpot has moved to transfer this action to the Western District of Washington, where it is headquartered. For the reasons articulated below, the motion to transfer is DENIED.

## BACKGROUND

    The following facts are drawn from the Complaint, Dkt. 1, as well as the declarations of Sean Muller, Dkt. 15 ("Muller Decl."), and Shameika Chan, Dkt. 19 ("Chan Decl."). Facts are assumed to be true for purposes of resolving the motion. *See Brown v. Web.com Grp., Inc.*, 57 F. Supp. 3d 345, 353 (S.D.N.Y. 2014).

    Chan, an African-American woman, was employed by iSpot as a senior marketing manager from October 22, 2019 through December 4, 2019. Compl. ¶¶ 9, 14, 50. Although she now resides in Los Angeles, she previously lived in New York, where iSpot's marketing department was located. *Id.* ¶¶ 9–10. The company, which is headquartered in Bellevue Washington, has since moved its marketing organization exclusively to its Washington headquarters. *Id.* ¶¶ 10, 50.

Chan asserts that throughout her employment, she was subject to discrimination and harassment due to her race, gender, and/or color. *Id.* ¶¶ 19, 21. She claims that her supervisor, Lindsay DiGiorgio, who is based in New York, was aware of this harassment at the time it occurred. Chan Decl. ¶¶ 7–9.

Specifically, Chan alleges that in January 2019, she was "berated" by her supervisor, a third-party vendor named Jason Damata, who is based in California. Compl. ¶¶ 5, 23; Muller Decl. ¶ 7. She claims Damata treated her during this incident in a way that he never treated her male colleagues. Compl. ¶¶ 5, 23. Following this incident, she asserts that "Mr. Damata would either ignore [her] work emails or write back to her using harsh language, a sharp contrast to the way he spoke with men." *Id.* ¶ 25.

In September 2019, Chan lodged a complaint with the head of human resources, Kristi Desart, who was based in Washington. *Id.* ¶¶ 28, 30; Muller decl. ¶ 5. In her complaint to Desart, Chan discussed both Damata's conduct as well as her frustration with the general lack of diversity at iSpot. Compl. ¶¶ 28, 30.

According to Chan, several months later, Damata became aware that Chan had reported him to human resources and retaliated by criticizing Chan's job performance—allegedly for the first time— to iSpot's CEO Sean Muller, who is based in Washington. Compl. ¶ 42; Muller Decl. ¶ 3.

In September 2019, iSpot undertook a reorganization of its marketing department, which was eventually relocated from New York to Washington. *Id.* ¶¶ 32, 36. On December 4, 2019, Chan was terminated. *Id.* ¶ 50. "The reason for her termination of employment provided by iSpot was that the marketing organization was going to be moved exclusively to iSpot's Washington headquarters." *Id.*

A few months later, in February 2020, Chan's colleague, Memunatu Mansaray, another African-American woman based in New York, was terminated after she lodged a complaint about racial discrimination in the workplace. Chan Decl. ¶¶ 10–11.

On October 1, 2020, Chan filed the instant lawsuit, alleging that iSpot committed discrimination, harassment, and retaliation in violation of 28 U.S.C. § 1981, the New York State Human Rights Law,

and the New York City Human Rights Law. Compl. ¶¶ 53–82. On January 7, 2021, iSpot filed a motion to transfer to the Western District of Washington pursuant to 28 U.S.C. § 1404. Dkt. 13. On March 26, 2021, Chan filed an unopposed motion for limited discovery. Dkt. 25. Specifically, she sought to compel Mansaray to answer four interrogatories about the alleged discrimination she experienced at iSpot. *Id.* The Court granted the motion, and later granted leave to file a sur-reply, documenting the answers to those interrogatories.

## LEGAL STANDARD

28 U.S.C. § 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

The purpose of a motion to transfer is to "prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Fuji Photo Film Co. v. Lexar Media, Inc.,* 415 F. Supp. 2d 370, 372 (S.D.N.Y.2006) (internal quotation marks omitted). "In considering whether to grant a venue transfer, courts engage in a two-part test: (1) whether the action 'might have been brought' in the proposed transferee forum; and (2) whether the transfer promotes convenience and justice." *Excelsior Designs, Inc. v. Sheres*, 291 F. Supp. 2d 181, 185 (E.D.N.Y. 2003) (quoting *Schertenleib v. Traum*, 589 F.2d 1156, 1161 (2d Cir. 1978)). "The moving party bears the burden of showing, by clear and convincing evidence, that a transfer is appropriate." *Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 229 (S.D.N.Y. 2011). "District courts have broad discretion in making determinations of convenience under Section 1404(a)[,] and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).

**DISCUSSION**

**I.     Whether this Action Might Have Been Brought in the Western District of Washington**

"An action 'might have been brought' in another forum if venue would have been proper there and the defendants would have been amenable to personal jurisdiction in the transferee forum when the action was initiated." *Lihuan Wang v. Phoenix Satellite TV US, Inc.*, 13-CV-218 (PKC), 2014 U.S. Dist. LEXIS 4173, 2014 WL 116220, at *2 (S.D.N.Y. Jan. 13, 2014) (citation omitted). Chan does not dispute that this action could have been brought in the Western District of Washington. The Court agrees. iSpot is headquartered within the Western District of Washington, Compl. ¶ 10, and is subject to personal jurisdiction there, *see Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (identifying domicile, place of incorporation, and principal place of business for asserting personal jurisdiction over a corporation). Venue is proper in that district for the same reason. *See* 28 U.S.C. § 1391 ("A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."). Accordingly, § 1404(a)'s first requirement is satisfied.

**II.    Whether Transfer Promotes Convenience and Justice**

In determining whether a transfer would promote convenience and justice, courts weigh certain factors including:

> (1) the convenience of witnesses, (2) the convenience of the parties, (3) the locus of operative facts, (4) the availability of process to compel the attendance of unwilling witnesses, (5) the location of relevant documents and the relative ease of access to sources of proof, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances.

*Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*, 119 F. Supp. 2d 433, 436 (S.D.N.Y. 2000). The Court will address each of these factors in turn, then will balance all nine factors together.

### A. The Convenience of the Witnesses

When deciding a motion to transfer, "[t]he convenience of the witnesses is generally considered the most important factor." *In re Stillwater Mining Co. Sec. Litig.*, 02-CV-2806 (DC), 2003 U.S. Dist. LEXIS 7983, 2003 WL 21087953, at *4 (S.D.N.Y. May 12, 2003). In assessing this factor, "a court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum." *Herbert Ltd. v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004). Rather, "the court must qualitatively evaluate the materiality of the testimony that the witnesses may provide." *Id.* Further, courts "regularly consider parties' control over key witnesses in . . . deciding on motions to transfer venue under the general assumption that parties will make their own witnesses available at trial." *Saget v. Trump*, 351 F. Supp. 3d 251, 255 (E.D.N.Y. 2019). Here, this factor does not clearly cut in favor of or against transfer.

The Western District of Washington would ostensibly be a more convenient forum for Washington-based human resources manager Kristin Desart, to whom Chan complained of the alleged discrimination she experienced. Compl. ¶¶ 28, 30. Although it is unclear whether Desart still works for iSpot, to the Court's knowledge, her most recent known address was in Washington state. Muller Decl. ¶ 5.

The Western District of Washington would also be more convenient for iSpot's CEO Sean Muller, who is a resident of the state and seems to have been at all times relevant to this litigation. *Id.* ¶ 2–3. While Muller appears to have played less of a role in the alleged discrimination than did Damata or Desart, his testimony is important because Chan met with Muller during the time the alleged harassment occurred, Compl. ¶ 33, and claims she was retaliated against after Damata complained about her to Muller, *id.* ¶ 42. At the same time, because Muller remains employed by iSpot, Muller Decl. ¶ 1, the Court presumes he will be willing to travel to New York to participate in this litigation, *see FIMCO, Inc. v. Funk*, C16-4109-LTS, 2016 U.S. Dist. LEXIS 167178, 2016 WL 7106520, at *2 (N.D. Iowa Dec.

5

5, 2016) ("In considering the convenience of witnesses, 'the Court must focus on non-party witnesses, since it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily in a foreign forum.'"); *Mylan Institutional LLC v. Aurobindo Pharma Ltd.*, 16-CV-00481 (RWS) (RSP), 2016 WL 9245112, at *4 (E.D. Tex. Nov. 14, 2016) ("Employees of a party or witnesses that a party otherwise controls are often entitled to little weight in a transfer analysis because compulsory process is not necessary to ensure that these witnesses attend trial."). His convenience thus weighs less heavily in the Court's analysis than the convenience of other witnesses.

The Southern District of New York would be a more convenient forum for New York-resident Lindsay DiGiorgio, Chan's former supervisor. Chan Decl. ¶¶ 7, 9. It is unclear whether DiGiorgio continues to work for iSpot or whether iSpot would facilitate her participation in this matter should it proceed in Washington. The Court also notes that because Chan has claimed solely that DiGiorgio "was aware of [Chan's] harassment" by Damata, *id*. ¶ 8, without alleging any details, it is unclear how useful her testimony will be.

The Southern District of New York would also be a more convenient forum for New York-based witness Memunatu Mansaray. Chan Decl. ¶ 10. Mansaray does not still work for iSpot and she may not be willing to travel to Washington should the transfer motion be granted. Additionally, the relevance of Mansaray's testimony may be of limited value. Chan seeks to elicit testimony from Mansaray about similar harassment she experienced by iSpot employee Heidi Ryder. Sur-reply Decl. at ¶ at 5. Because this harassment was allegedly perpetrated by a different supervisor and did not directly involve Chan, Mansaray's participation thus appears less critical than the participation of the witnesses referenced above, although it may still be important.

Finally, neither New York nor Washington would be obviously more convenient for Chan's alleged harasser, Jason Damata, who is a resident of California. Muller Decl. ¶ 7, Compl. ¶ 17. The

Court is not clear as to how transfer might affect Damata's likelihood of participation, although it notes that Damata is not an iSpot employee.  Compl. ¶ 17.

In sum, this factor does not plainly weigh either in favor or against transfer, and instead is neutral.

### B. The Convenience of the Parties

"The convenience of the parties favors transfer when transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant." *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 399 (S.D.N.Y. 2014).  Because Chan now resides in neither Washington nor New York, she has already "chose[n] to litigate in a forum that requires travel and increased expenses." *NetSoc, LLC v. LinkedIn Corp.*, 18-CV-12215 (RA), 2020 U.S. Dist. LEXIS 6425, 2020 WL 209864, at *4 (S.D.N.Y. Jan. 14, 2020). For this reason, "whether the case now proceeds in New York or [Washington] does not change that fact or pose any additional burden." *Id*.  Because Defendant is based in Washington, this factor thus weighs in favor of transfer.

### C. The Locus of Operative Facts

"The location of the operative facts is traditionally an important factor to be considered in deciding where a case should be tried." *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 134 (S.D.N.Y. 1994).  "To determine the locus of operative facts, a court must look to the site of the events from which the claim arises*." Ivy Soc'y Sports Group, LLC v. Baloncesto Superior Nacional*, 08-CV-8106 (PGG), 2009 U.S. Dist. LEXIS 65193, 2009 WL 2252116, at *3 (S.D.N.Y. July 28, 2009). When the events giving rise to the claim occurred in multiple locations, this factor is neutral, and weighs in favor of neither jurisdiction.  *See, e.g., Age Group v. Regal Logistics, Corp.*, 06-CV-4328 (PKL), 2007 U.S. Dist. LEXIS 62476, 2007 WL 2274024, at *3 (S.D.N.Y. Aug. 8, 2007) ("New York and Washington are, collectively, the loci of operative facts. This factor is thus neutral and does not weigh in favor of transfer."); *see also IDT Domestic Telecom, Inc. v. Estrella Telecom, Inc.*, 09-CV-10436 (HB), 2010 U.S. Dist. LEXIS 26285, 2010 WL 1047648, at *3 (S.D.N.Y. Mar. 19, 2010) ("Although

there is some evidence that a representative of Plaintiff visited the Defendant's Florida offices, the alleged breach occurred when Defendant, in Florida, failed to pay Plaintiff, in New Jersey. Thus, the locus of operative facts is a neutral factor."). *But see Lihuan Wang*, 2014 WL 116220, at *5.

Chan alleges she was harassed and discriminated against by Damata while she was working in New York. *See* Chan Decl. ¶¶ 1, 6; Compl. ¶¶ 23–27. It is not clear from the face of the Complaint, however, whether Damata was also in New York when this alleged mistreatment occurred, as each of the allegedly harassing or discriminatory incidents occurred via email or telephone. *See id.* ¶¶ 24–26. Similarly, while Chan was terminated from her position in the New York office, the decision to terminate her was purportedly made from iSpot's Washington headquarters. Def. Mem. at 8. The Court thus concludes that this factor is neutral.

### D. The Availability of Process to Compel the Attendance of Unwilling Witnesses

Federal Rule of Civil Procedure 45 states that:

> A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
>   (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
>   (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person is a party or a party's officer; or is commanded to attend a trial and would not incur substantial expense.

Fed. R. Civ. P. 45(C)(1).

Because potentially unwilling witnesses reside on both coasts, the parties may find themselves unable to compel the attendance of all the witnesses no matter the forum. Damata, a non-party witness, resides more than 100 miles from New York, while non-party witnesses DiGiorgio and Mansaray reside more than 100 miles from Washington. This factor is thus neutral.

### E. The Location of the Relevant Documents and the Relative Ease of Access to Sources of Proof

The majority of the relevant documents are maintained in Washington. Muller Decl. ¶ 8. But "[a]ccess to documents and other proof is not a persuasive factor in favor of transfer without proof that

8

documents are particularly bulky or difficult to transport, or proof that it is somehow a greater imposition for defendant to bring its evidence to New York than for plaintiff to bring its evidence to [the moving party's proposed forum]." *Sunshine Cellular v. Vanguard Cellular Systems, Inc*., 810 F. Supp. 486, 500 (S.D.N.Y. 1992). iSpot has not "endeavored to show that the relevant documents and records in [Washington] are voluminous, or that copying and shipping them to New York would otherwise impose an inordinate or unfair burden on" it. *Constitution Reinsurance Corp. v. Stonewall Ins. Co*., 872 F. Supp. 1247, 1251 (S.D.N.Y. 1995) "As a result, the Court finds that this factor does not weigh in favor of transfer," *Id*., but rather, is neutral.

### F. The Relative Means of the Parties

"[W]here disparity exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered." *Berman v. Informix Corp*., 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998) (citing *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 987 (E.D.N.Y. 1991)). This is such a case. However, Chan does not assert that transferring this action to the Western District of Washington will increase the costs of litigating this case, only that it will "not decrease [her] costs." Pl. Mem. at 7. She asserts that transfer would cause her to incur costs obtaining local counsel or transporting her counsel from New York. *Id*. "The convenience of attorneys is not entitled to great weight on a motion to transfer" however, because "[a]ttorneys frequently travel to attend depositions all over the world and if the cost or convenience of travelling is too burdensome, local counsel can be employed." *Babbidge v. Apex Oil Co*., 676 F. Supp. 517, 522 (S.D.N.Y. 1987). This factor is thus neutral to transfer.

### G. The Forum's Familiarity with the Government Law

Because employment law is a subject "on which both courts are familiar, this factor is neutral." *AEC One Stop Grp., Inc*. *v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 531 (S.D.N.Y. 2004). Even if

it were not neutral, this factor is "generally given little weight." *Am. Eagle Outfitters, Inc. v. Lain Bros. Corp.*, 457 F. Supp. 2d 474, 479 (S.D.N.Y. 2006); *see also AEC*, 326 F. Supp. 2d at 531.

### H. The Weight Accorded the Plaintiff's Choice of Forum

"A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless other factors weigh strongly in favor of transfer." *Excelsior Designs*, 291 F. Supp. 2d at 187. Yet, as Chan acknowledges, Pl. Mem. at 4, in cases where "the forum chosen is not the plaintiff's home forum, the choice is given less deference." *Kiss My Face Corp. v. Bunting*, 02-CV-2645 (RCC), 2003 U.S. Dist. LEXIS 17096, 2003 WL 22244587, at *4 (S.D.N.Y. Sept. 30, 2003); *see also Kwik Goal, Ltd. v. Youth Sports Publ'g Inc.*, 06-CV-395 (HB), 2006 U.S. Dist. LEXIS 34460, 2006 WL 1517598, at *2 (S.D.N.Y. May 31, 2006) ("[T]he plaintiff's selection [of forum] is entitled to less deference here. First, the chosen forum is not plaintiff's home state."). This factor thus weighs against transfer, although only to a limited degree.

### I. Trial Efficiency and the Interest of Justice

This factor often weighs strongly in favor of transfer when there are multiple litigations between the same parties, which is not the case here. *See, e.g., Lapa v. Massage Envy Franchising, LLC*, 18-CV-7403 (JFK), 2019 U.S. Dist. LEXIS 77118, 2019 WL 2004072, at *3 (S.D.N.Y. May 7, 2019); *NetSoc*, 2020 WL 209864, at *6. "Courts addressing this factor also consider whether transfer would facilitate discovery." *Tianhai Lace USA, Inc. v. Forever 21, Inc.*, 16-CV-5950 (AJN), 2017 U.S. Dist. LEXIS 168187, 2017 WL 4712632, at *7 (S.D.N.Y. Sept. 27, 2017). "Transfer of an action facilitates discovery when: (i) the action is in the early stages of litigation; and (ii) the transferee district is the place where the operative events occurred and where many witnesses and documents are located." *Wechsler v. Macke Int'l Trade Inc.*, 99-CV-5725 (AGS), 1999 U.S. Dist. LEXIS 19800, 1999 WL 1261251, at *10 (S.D.N.Y. Dec. 27, 1999). Other than the brief interrogatories conducted for purposes of this motion, *see* Dkt. 26, discovery has not begun. And as discussed above, the majority of the evidence is located

10

in Washington and the majority of the thus-far identified witnesses are on the west coast, if not in Washington. Muller Decl. ¶¶ 3, 5, 8. Chan herself resides significantly closer to the Western District of Washington than she does the Southern District of New York. For these reasons, this factor favors transfer.

### J. Balancing the Factors

In sum, two of the relevant factors favor transfer, one weighs against it, and the majority are neutral. Perhaps most importantly, the factor considered by courts to be the most powerful—the convenience of the witnesses—does not weigh clearly in either direction. *See In re Eastern District Repetitive Stress Injury Litigation*, 850 F. Supp. 188, 194 (E.D.N.Y. 1994) (citing *Saminsky v. Occidental Petroleum Corp.*, 373 F. Supp. 257, 260 (S.D.N.Y. 1974)). Recognizing that this is thus a close question, the Court concludes that this record does not amount to "a clear and convincing showing that the balance of convenience favors defendant['s] choice." *Orb Factory Ltd. v. Design Sci. Toys, Ltd.*, 6 F. Supp. 2d 203, 208 (S.D.N.Y. 1998) (citing *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989)).

## CONCLUSION

For the foregoing reasons, the motion to transfer is denied. The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 13.

SO ORDERED.

Dated:   June 17, 2021
            New York, New York

                                        RONNIE ABRAMS
                                        United States District Judge